IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DENNIS RUSSELL HOOPER,                          Civ. No. 1:12-cv-00297-CL

                Plaintiff,

                                    REPORT & RECOMMENDATION

      v.

UNITED STATES OF AMERICA,

                Defendant.

---

CLARKE, Magistrate Judge.

        Plaintiff Dennis Russell Hooper ("Hooper"), proceeding *pro se* and *in forma pauperis*, brings this Federal Tort Claims Act case against defendant United States, alleging that the United States invaded his privacy by releasing medical records to nonmedical personnel without his approval. This court has jurisdiction pursuant to 28 U.S.C. § 1331. Currently before the court is a motion for summary judgment (#42) filed by the United States. For the reasons below, the court recommends that the United States' motion be granted in part and denied in part.

## BACKGROUND

The following facts are not in dispute:

In 2007, Medford Police Officer David Awbrey ("Officer Awbrey") received a complaint against Hooper. Tim Simmons Declaration ("Simmons Decl."), Ex. 2, p. 7-8. The complainant told Officer Awbrey that Hooper forced her to move out of a residence in Medford, and that Hooper was a permanent resident of Oregon but had not registered his vehicle in Oregon or obtained a valid Oregon driver's license. Id.; Simmons Decl., Ex. 1, p. 2. Responding to the call, Officer Awbrey went to the residence and observed a red Jeep with Georgia license plates parked in the garage. Id. Officer Awbrey tried knocking on the door of the residence several times, but no one answered. Id.

On February 15, 2009, Officer Awbrey was on patrol when he saw Hooper make a lane change violation. Id. Officer Awbrey recognized Hooper's Jeep from the complaint in 2007 and pulled him over. Id. When Officer Awbrey approached the Jeep, Hooper asked what probable cause he had for stopping him. Id. Officer Awbrey told Hooper that he had not signaled for 100 feet prior to changing lanes and asked for Hooper's driver's license. Id. Hooper gave Officer Awbrey his Georgia driver's license, registration, proof of insurance, and an identification card issued by the Veterans Administration ("V.A."). Simmons Decl., Ex. 3, p. 6. Officer Awbrey asked Hooper where he lived. Simmons Decl., Ex. 1, p. 2. Hooper gave Officer Awbrey an address in Georgia and stated that he was in town to receive treatment for a damaged spine at the V.A. Domiciliary ("V.A. Dom.") in White City, Oregon. Id.

Officer Awbrey told Hooper that he knew Hooper was an Oregon resident due to his attempted contact in 2007. Simmons Decl., Ex. 1, p. 2. Hooper responded that Officer Awbrey could not prove he was a resident of Oregon. Id. Officer Awbrey noted that Hooper had a

temporary trip permit from the Oregon Department of Motor Vehicles issued on February 11, 2009, and that Hooper's Georgia license plate on his Jeep was expired. Id.

Officer Awbrey then contacted his sergeant, who told Officer Awbrey to contact the V.A. to confirm Hooper's statement that he was receiving treatment. Simmons Decl., Ex. 1, p. 2-3. From his patrol vehicle, Officer Awbrey called the V.A. Dom. and spoke with V.A. employee Leonard Resler ("Resler"), the Administrative Officer of the Day. Id. Resler told Officer Awbrey that Hooper was receiving outpatient treatment for a spinal cord injury at T-10. Simmons Decl., Ex. 1, p. 3; Ex. 3, p. 8. Resler also told Officer Awbrey the date that Hooper had started treatment, the name of the physician treating Hooper, and that Hooper had listed a Post Office box out of Rogue River, Oregon as his address on his V.A. forms. Simmons Decl., Ex. 1, p. 3. Officer Awbrey then went back to Hooper, stated that he had spoken with someone at the V.A. Dom., and asked him why he did not know want people to know where he lived. Id.; Simmons Decl., Ex. 3, p. 5. Hooper repeated that he could not prove Hooper was a resident of Oregon. Simmons Decl., Ex. 1, p. 3. Officer Awbrey repeated that he had seen Hooper's Jeep in 2007, cited Hooper for an unlawful lane change and operating a vehicle without driving privileges, and impounded the Jeep. Id.; Simmons Decl., Ex. 5, p.1.

On June 17, 2009, the court assessed a fine and fee of $255 for Hooper's traffic violations. Simmons Decl., Ex. 5, p.1. On November 13, 2009, Hooper filed an administrative tort claim with the V.A. for unauthorized release of his medical information, demanding $5,440.[1] Simmons Decl., Ex. 6, p.1. The claim was denied on August 24, 2011. Simmons Decl., Ex. 7, p.1. Hooper then filed the present case in this court, seeking damages of $9,000 and an order enjoining the V.A. from further disseminating his personal medical information. Compl., p. 5.

---

[1] The court notes that if Hooper's lawsuit is successful, his damages are likely capped at the $5,440 listed in his administrative claim. *See* 28 U.S.C. § 2675(b).

## LEGAL STANDARD

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material of fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). The court cannot weigh the evidence or determine the truth but may only determine whether there is a genuine issue of fact. Playboy Enters., Inc. v. Welles, 279 F.3d 796, 800 (9th Cir. 2002). An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting Anderson, 477 U.S. at 248).

When a properly supported motion for summary judgment is made, the burden shifts to the opposing party to set forth specific facts showing that there is a genuine issue for trial. Anderson, 477 U.S. at 250. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must designate specific facts which show there is a genuine issue for trial. Devereaux, 263 F.3d at 1076. In assessing whether a party has met its burden, the court views the evidence in the light most favorable to the non-moving party. Allen v. City of L.A., 66 F.3d 1052, 1056 (9th Cir. 1995).

## NEGLIGENT TRAINING AND SUPERVISION

Hooper argues that the V.A. Dom. was negligent in its training and supervision of Resler and other V.A. employees regarding patient privacy. The United States argues that this claim is barred by the discretionary function exception to the Federal Tort Claims Act ("FTCA").

The FTCA gives the court subject matter jurisdiction over certain claims against the United States for injuries caused by wrongful acts or omissions of any government employee acting within the scope of employment.  28 U.S.C. § 1346(b)(1).  Jurisdiction over these claims is limited to "circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."  Id.  The United States is generally liable for tort claims under the FTCA "in the same manner and to the same extent as a private individual under like circumstances."  28 U.S.C. § 2674.

Some exceptions to the FTCA, however, limit the United States' liability.  The discretionary function exception precludes claims against the United States which are based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion was abused."  28 U.S.C. § 2680(a).  Claims of negligent or reckless supervision and training of government employees "fall squarely within the discretionary function exception" of the FTCA and are barred.  Nurse v. U.S. 226 F.3d 996, 1001-1002 (9th Cir. 2000).  Because Hooper's claims against the V.A. regarding lack of training, supervision, and instruction of Resler and other V.A. Dom. employees fall within this exception, the United States' motion for summary judgment regarding these claims should be granted.

## INVASION OF PRIVACY

Hooper also alleges a claim for invasion of privacy based on Resler's disclosures to Officer Awbrey.  Because Resler's actions occurred in Oregon, Hooper's cause of action arises under Oregon tort law.  See U.S. v. Olson , 546 U.S. 43, 46 (2005) (United States' liability under the FTCA is based on the liability of a private party under local law).  Oregon recognizes four theories that comprise the tort of invasion of privacy: "(1) intrusion upon seclusion; (2)

appropriation of another's name or likeness; (3) false light; and (4) publication of private facts."

Mauri v. Smith, 324 Or. 476, 482 (1996). To prevail on an invasion of privacy claim under an

intrusion upon seclusion theory, the theory most directly relevant to Hooper's claims, a plaintiff

must prove: "(1) an intentional intrusion, physical or otherwise, (2) upon plaintiff's solitude or

seclusion or private affairs or concerns, (3) which would be highly offensive to a reasonable

person." Id. at 483. The United States argues that Hooper cannot establish any of these three

elements.

## I.    Intentional Intrusion

The first element of an invasion of privacy claim on an intrusion upon seclusion theory is

"an intentional intrusion, physical or otherwise." Mauri, 324 Or. at 483. An intrusion "'may be

by some [ ] form of investigation or examination into his private concerns.'" Perez-Denison v.

Kaiser Found. Health Plan of the Nw., 868 F.Supp.2d 1065, 1090 (D.Or.2012) (quoting

Restatement (Second) of Torts § 652B, cmt. b (1977)). An intrusion only occurs when the

defendant acts without the plaintiff's permission, consent, or authorization. Mauri, 324 Or. at

484 (citing O'Donnell v. U.S., 891 F.2d 1079 (3d Cir. 1989), Gilmore v. Enogex, Inc., 878 P.2d

360, 366 (Okla. 1994)). A person commits an intentional intrusion "if the actor either desires to

cause an unauthorized intrusion or believes that an unauthorized intrusion is substantially certain

to result from committing the invasive act in question." Mauri, 324 Or. at 484.

In Perez-Denison v. Kaiser Foundation Health Plan of the Northwest, the District Court

of Oregon determined, among other claims, whether an intake specialist at an urgent care center

had a cause of action for invasion of privacy on an intrusion on seclusion theory under Oregon

law when her supervisor accessed her medical records. 868 F.Supp.2d at 1089. The urgent care

center's confidentiality policy prohibited accessing medical records without the specific purpose

of providing medical care. Id. at 1073. The plaintiff's supervisor, after the plaintiff had accumulated a number of corrective actions, accessed the plaintiff's medical records to confirm whether she had attended a medical appointment on a certain day. Id. at 1073. The defendants moved for summary judgment on the plaintiff's claim for intrusion on seclusion, arguing that the plaintiff had told other employees that she had a doctor's appointment on that day and thus had consented to the access of the portion of her medical records listing the date and time of the appointment. Id. at 1089. The court disagreed, finding that accessing medical records may have violated both the urgent care center's privacy policy and the plaintiff's general privacy interest, stating "a material issue of fact exists as to whether the reasonable man would object to his medical records being accessed without his consent, regardless of the information obtained." Id. at 1090.

Mindful of the court's analysis in Perez-Denison, the court finds an issue of fact as to whether Resler intentionally intruded on Hooper's privacy. Resler gave Officer Awbrey Hooper's doctor's name, the date Hooper started treatment, the nature of the treatment, and information about his address. Hooper did not expressly authorize Resler to give this information. Nor, viewing the facts in the light most favorable to Hooper, did Hooper impliedly consent to Resler accessing his records when Hooper told Officer Awbrey that he was receiving treatment for his spine at the V.A. Dom. Indeed, just as the fact that the plaintiff in Perez-Denison volunteered that she was going to a doctor's appointment on a certain date did not mean that she had consented to her supervisor accessing her medical records, the fact that Hooper volunteered information about his spine treatment may not have impliedly authorized Resler to disclose information from Hooper's medical records.

In addition to violating Hooper's general right to privacy, Resler may also have violated the V.A.'s privacy policy. The V.A.'s "Notice of Privacy Practices" states that health information may be disclosed to law enforcement agencies when the employee is "[r]esponding to a specific request when in pursuit of a focused civil or criminal law enforcement investigation." Hooper Decl., Ex. 4, p. 4. Assuming that Officer Awbrey was conducting a focused investigation into whether Hooper resided in Oregon when he spoke with Resler, Resler should only have responded to "specific requests" regarding Resler's residence. Viewing the facts in the light most favorable to Hooper, Resler violated the V.A.'s privacy policy when he shared what Hooper was receiving treatment for and the name of his treating physician.

## II.     Solitude or Seclusion

The tort of invasion of privacy "protects the right of a plaintiff 'to be let alone.'" Mauri, 324 Or. at 482 (quoting Humphers v. First Interstate Bank, 298 Or. 706, 714 (1985) (internal citation omitted)). To establish the second element of this tort under an intrusion on seclusion theory requires that the plaintiff show that the intrusion was upon plaintiff's solitude or seclusion or private affairs or concerns. Mauri, 324 Or. at 485. As the court noted in Perez-Denison, a plaintiff's medical records are considered private, and the unauthorized access or disclosure of the records is an intrusion on seclusion. 868 F.Supp.2d at 1090. Viewed in the light most favorable to Hooper, this element is also met.

## III.    Highly Offensive

The final element of the tort of intrusion on seclusion is that the intrusion be "highly offensive to a reasonable person." Mauri, 324 Or. at 485; *see also* Restatement (Second) of Torts § 625B, cmt. d ("[t]here is [ ] no liability unless the interference with the plaintiff's seclusion is…the result of conduct to which the reasonable man would strongly object"). When

determining whether a defendant's conduct was highly offensive, the court should consider factors including "the extent of the intrusion, the context, conduct and circumstances surrounding the intrusion, the defendant's motives, the setting into which the defendant intruded and the plaintiff's expectation of privacy." Magenis v. Fisher Broadcasting, 103 Or.App. 555, 562 (1990). For the purposes of the United States' motion for summary judgment, the court finds that Resler's conduct meets this standard. As the court held in Perez-Denison, "HIPAA suggests Congress has determined reasonable people want their medical records private and strongly object to those records being inappropriate accessed." 868 F.Supp.2d. at 1090. Here, though Officer Awbrey ostensibly contacted Resler to confirm that Hooper resided in Oregon, Resler gave Officer Awbrey the date Hooper started treatment, the nature of his visits, and the name of his treating physician. An issue of fact exists as to whether Resler's disclosures went beyond what was needed for an investigation into Hooper's residency. Viewed in the light most favorable to Hooper, a jury could find that, absent a warrant or subpoena, Resler's disclosures would be highly offensive to a reasonable person.

### RECOMMENDATION

For the reasons stated above, the court recommends that the United States' motion for summary judgment (#42) be granted as to Hooper's negligent training and supervision claim, and denied as to Hooper's invasion of privacy claim.

***This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.*** Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. ***Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days after the date***

*this recommendation is filed.  If objections are filed, any response is due within fourteen(14)*

*days after the date the objections are filed.* *See* FED. R. CIV. P. 72, 6.  Parties are advised that the

failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED this _29_ day of AUGUST, 2013.


MARK D. CLARKE
United States Magistrate Judge